UNITED STATES DISTRICT COURT
WESTERN DISTRICT of TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JEREMIAH LEOS, TDCJ # 1166394,** § § | | |
| **Petitioner** § § | | |
| v. § § | | **Civil Action** |
| | | **No. SA-7-CA-160-NSN** |
| **NATHANIEL A. QUARTERMAN,** § | | |
| **Texas Department of Criminal Justice** § | | |
| **Correctional Institutions Division Director,** § § | | |
| **Respondent** § | | |

# M E M O R A N D U M   D E C I S I O N

Before the Court is Petitioner Jeremiah Leos' 28 U.S.C. § 2254 Habeas Corpus Petition (Docket Entries ## 1 & 2) and Respondent's Answer seeking dismissal of the Petition (Docket Entry # 14) which this Court construes as a motion to dismiss. This Memorandum Decision is entered pursuant to 28 U.S.C. § 636(c) and the consent of the parties. (*See* Docket Entries ## 111-13.)

**I.**

In *State v. Leos*, No. 2002-CR-4781 (Tex. 227th Jud. Dist. Ct., *jmt. entered* Feb. 10, 2005), a Bexar County jury convicted Petitioner Leos for the November 20, 2001 stabbing murder of Earl Reyna following a late night altercation outside a San Antonio convenience store. Petitioner was sentenced to forty-five years. Petitioner's conviction was affirmed. *Leos v. State*, No. 4-3-336-CR (Tex. 4th Ct. Apps.-San Antonio, Feb. 2, 2005). The Fourth Court of Appeals described the evidence against Leos as follows:

> The record establishes that Reyna's wife Debra Orosco, his brother Winston Smith, and Willow Holliday-all of whom witnessed the attack-identified Leos as the assailant from photo arrays shown them by the police. Another witness, Pedro

> Valdez testified that, while he and Leos were both incarcerated in the Bexar County Jail, Leos asked Valdez if he and Reyna's brothers were upset with him for killing Reyna and told him "he didn't mean for it to happen." Similarly, Joe Mora testified that, while he and Leos were both incarcerated in the Bexar County Jail, he was told by Leos that he had killed Reyna.

Petitioner's State habeas corpus application was denied. *Ex parte Leos*, No. 65,252-1 Sup. R. (*denied* Jan. 31, 2007).

Leos' § 2254 Petition contends: the prosecution improperly commented on Leos' failure to testify and improperly discussed parole at the sentencing phase; the prosecution threatened and coerced a key prosecution witness to testify falsely; and his counsel was ineffective for advising him to reject a plea deal for a sentence of twenty-five years, for failing to object to the prosecutions' improper discussion of parole at the sentencing phase, and on appeal for failing to challenge the prosecutions' improper comment on Leos' failure to testify.

## II.

Federal habeas corpus relief is available only where the petitioner demonstrates he is in custody in violation of his constitutional or other federal rights. 28 U.S.C. §§ 2241, 2254. State law errors that do not implicate constitutional rights are not a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Rule 2(d) of the Rules Governing § 2254 Proceedings states the petition "shall set forth in summary form the facts supporting each of the grounds." Conclusory and speculative allegations are not sufficient to entitle a petitioner to a hearing or relief in a § 2254 case. *West v. Johnson*, 92 F. 3d 1385, 1398-99 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997); *Perillo v. Johnson*, 79 F. 3d 441, 444 (5th Cir. 1996).

Section 2254(b)(1)(A) requires the petitioner to exhaust available state court remedies before seeking federal habeas corpus relief. To exhaust state remedies in Texas, a petitioner must present

his claim to the Texas Court of Criminal Appeals by direct appeal or through a post-conviction writ application. *Richardson v. Procunier*, 762 F. 2d 429, 431 (5th Cir. 1985). Section 2254(d) requires this Court to defer to the state court's reasonable interpretations of federal law and reasonable determinations of fact in light of the evidence presented in the state proceedings. Factual determinations of a state court are "presumed to be correct" and the petitioner has the burden of rebutting this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

- A -

Federal habeas courts have no jurisdiction to review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Federal habeas review is barred unless the prisoner can demonstrate cause for the default and prejudice as a result of the alleged federal violation, or demonstrate failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* at 750. The fundamental miscarriage of justice standard applies only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

The Texas courts held that Leos' claims the prosecution improperly commented on Leos' failure to testify and improperly discussed parole at the sentencing phase are procedurally barred under Texas law because these claims should have been raised on direct appeal but were not. *Ex parte Leos*, No. 65,252-1 Supp. R. at 75. Furthermore, the record shows there was no contemporaneous objection at trial on these bases. Lack of a contemporaneous objection and the Texas contemporaneous objection rule procedurally bar consideration of these claims in this federal habeas corpus proceeding. *See*

*Amos v. Scott*, 61 F.3d 333, 340-43 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995).  Therefore these issues are procedurally barred and in any event are without merit.

- i -

At trial the defense presented the alibi testimony of Jose Leos, Leos' father, who testified that he was picking up Leos at work about the time of the murder.  During the cross-examination of Jose Leos' the following exchange took place:

> Q [by the prosecution].  And how is it that you would remember that on that particular day, two years ago, that you picked him up from work?
>
> A.  Because a couple of days later, officers barged in my house looking for him.
>
> Q.  So when they came looking for him, did you tell them where he was?
>
> A.  I didn't know where he was.
>
> . . . .
>
> Q.  So are you aware that he was no longer at apartment 1408, living with his mom after the night this happened?
>
> A.  No.
>
> Q.  No one saw him after that day for six months.  Did - -
>
> A.  I didn't see him after that.
>
> Q. Did you know that no one saw him after that for six months?
>
> A.  No.
>
> . . . .
>
> Q.  So at no time did you explain to the officers, or did you tell Jeremiah to explain to the officers that that night he was with you?

>    A.  I told him that he didn't live with me.  That I – I - sometimes he call me for a ride. . . .
>
>    Q.  At the time that this happened, if, in fact he was at work and went home with you that night, then he shouldn't have had a problem telling police officers that; isn't that true?
>
>    [Defense Counsel] MS. RAMIREZ: Objection, speculation.
>
>    THE COURT: Overruled.
>
>    THE WITNESS: I guess.  I still don't understand your question.
>
>    Q (BY [the prosecution]).  Can you explain why he was gone for six months, if all of this could have been cleared up with just one conversation?
>
>    MS. RAMIREZ: Objection, speculation.
>
>    THE COURT: Overruled.
>
>    Q (BY MS. RODRIGUEZ).  If you know?
>
>    A.  I can't say.

Leos claims the prosecution's questions concerning Leos' whereabouts for six months following the incident were an improper comment on Leos' failure to testify in violation of his right against self-incrimination because only Leos could testify to his whereabouts.

The Fifth Amendment prohibits a defendant from being compelled to incriminate himself and entitles a defendant to remain silent; it follows that a prosecutor may not comment at trial on a defendant's choice to remain silent without violating a defendant's Fifth Amendment rights.  *See Doyle v. Ohio*, 426 U.S. 610, 617-18, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).  "The test for determining if a constitutional violation has occurred is whether 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *U.S.  v. Wharton,* 320 F. 3d 526, 538 (5th Cir. 2003).  A

prosecutor's intent "is not manifestly impermissible if there is some other, equally plausible explanation for [his] remark," and "the question is not whether the jury might or probably would view the challenged remark [as a comment on silence], but whether it necessarily would have done so." *Barrientes v. Johnson,* 221 F. 3d 741, 780 (5th Cir. 2000).

The prosecution's questions would not naturally and necessarily be construed as a comment on Leos' failure to testify. Rather the prosecution's questions were intended to point out to the jury that Leos fled and disappeared for six months following the incident, and Leos' flight and disappearance were inconsistent with the defense's alibi defense. Such questioning and argument is not improper, and there was no Fifth Amendment violation. *See Whittington v. Estelle*, 704 F. 2d 1418, 1425 (5th Cir. 1983) ("evidence of flight is always admissible as a circumstance from which an inference of guilt may be drawn").

In any event the jury was properly instructed that it "cannot and must not" use Leos' election not to testify at trial against him "or to take it into consideration for any purpose whatsoever." Jurors are presumed to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987), and there is no reason to assume they did not do so.

- ii -

Leos next claims that during the sentencing phase the prosecution improperly discussed parole law and erroneously told the jury Leos would serve only half of any sentence the jury imposed. This claim is defied by the record.

During the sentencing phase the prosecutor explained that a defendant convicted of murder is eligible for parole after serving half of his sentence or after serving thirty years whichever is less, without consideration for any good time credit he may have earned. This is an accurate statement of

Texas law and merely paraphrased the trial court's previous instruction that a defendant's sentence "might be reduced by the award of a parole" and "if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one half of the sentence." Because the prosecutor's explanation of parole law was an accurate statement of Texas law it was unobjectionable.

- B -

The state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *See Giglio v. U.S.*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). The defendant must show the testimony was false, the state knew the testimony was false, and it was material. *See Kirkpatrick v. Whitley,* 992 F. 2d 491, 497 (5th Cir. 1993). The federal courts view recanting affidavits with extreme suspicion. *Spence v. Johnson,* 80 F. 3d 989, 1003 (5th Cir. 1996).

Leos claims that the prosecution threatened and coerced Willow Holliday a key prosecution witness to testify falsely. In support of this claim Leos' presents the Affidavit of Willow Holliday stating Leos was not the individual she saw murder Reyna, and she testified falsely against Leos because she was intimidated and threatened into doing so by the prosecutor who said he would file perjury charges against her if she did not testify against Leos. In opposition to this claim the State presented the Affidavits of Ray Gattinella and Liza Rodriguez-Duron, the two assistant district attorneys assigned to the case, and Joseph L. Piette, the case investigator, stating that when they contacted Holliday she cooperated and told them she observed Leos punch or strike Reyna in front of the convenience store on the evening of November 20, 2001. She also stated she knew both Leos

and the victim, and was afraid that Leos' family, who lived in her apartment complex, might hurt her or her children.

The State court credited the Affidavits of the State prosecutors and investigator and found the Holliday Affidavit was not credible. *Ex parte Leos*, No. 65, 252-1 Supp. R. at 75. A state trial judge may make credibility determinations based on affidavits and the record as a whole, and such findings are entitled to a presumption of correctness. *See Baldree v. Johnson*, 99 F. 3d 659, 662 (5th Cir. 1996), *cert. denied*, 520 U.S. 1194 (1997). The state trial judge's determination the Holliday Affidavit was not credible is entitled to a presumption of correctness, and Petitioner Leos failed to present clear and convincing evidence sufficient to overcome this presumption. *See id.* Accordingly, Leos' claim the State knowingly presented false testimony against him is not credible and is meritless.

- C -

Petitioner also contends his counsel was ineffective. To establish ineffective assistance of counsel, a petitioner must show counsel's performance was deficient, i.e. counsel's performance was not professionally reasonable, and counsel's deficient performance prejudiced the petitioner, i.e. "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-94, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 689. In order to demonstrate prejudice, a petitioner must show not only that had counsel acted in a different manner a new trial would have been granted, but also that, as a result of counsel's incompetence, the trial was rendered fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S. Ct. 838, 112 L. Ed. 2d 180 (1993). To show ineffective assistance of

counsel in the context of a sentencing hearing "a court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). To show appellate counsel was ineffective a petitioner must show counsel unreasonably failed to present a non-frivolous issue on appeal and if not for this deficiency there is a reasonable probability he would have prevailed on appeal. *See Smith v. Robbins*, 528 U.S. 259, 284-86, 104 S. Ct. 746, 145 L. Ed. 2d 756 (2000).

**- i -**

Petitioner contends his counsel was ineffective for advising him that the state had a weak case and to reject a plea deal for a sentence of twenty-five years. This claim is contradicted by the record. The Affidavit of Leos' former attorney Stephanie R. Boyd states she advised Leos he faced a sentence of five years to 99 years if found guilty, and it was unlikely a jury would find him not guilty because of the number of witnesses against him. The Affidavit of Leos' former co-counsel Celeste Ramirez states: she advised Leos the day before trial to accept the State's offer of a twenty-five year plea deal because the State had several witnesses who would testify Leos murdered Reyna and Leos would most likely get more than twenty-five years from the jury; Leos rejected Ramirez' advise, became upset that counsel told him he was going to be convicted, and requested new court-appointed counsel (which was denied by the trial judge). The State habeas court credited the Boyd and Ramirez Affidavits and rejected Leos' claim of ineffective counsel. *Ex parte Leos*, No. 65,252-1 Sup. R. at 76. The State habeas court's determination is reasonably supported by the record and this Court must defer to that determination pursuant to § 2254(e)(1).

- ii -

Petitioner Leos also claims his counsel was ineffective for failing to object to the prosecutions' improper discussion of parole at the sentencing phase and on appeal for failing to challenge the prosecutions' improper comment on Leos' failure to testify. As previously discussed, these issues are without merit, and thus counsel was not ineffective for failing to raise these issues. *See Koch v. Puckett*, 907 F. 2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). Petitioner failed to demonstrate counsel was deficient or he was prejudiced by counsel's performance, and thus Petitioner's ineffective counsel claim is without merit. *See Anderson v. Collins*, 18 F. 3d 1208, 1221 (5th Cir. 1994).

In any event, a federal habeas court may not grant relief on trial errors unless petitioner demonstrates the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). Even excluding the testimony of Willow Holliday, three individuals testified they witnessed Leos stab Reyna on the evening of November 20, 2001; and while Leos was in the custody of the Bexar County Jail he admitted and even bragged about killing Reyna to two individuals on separate occasions. Because of the overwhelming evidence against Leos any trial or counsel errors did not affect the jury's verdict.

Section 2254(d) requires this Court to defer to the state court's reasonable interpretations of federal law and reasonable determinations of fact. Factual determinations of a state court are "presumed to be correct" and the Petitioner has the burden of rebutting this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The State court's denial of Petitioner's claims is reasonably supported by the record and is consistent with federal law as required by § 2254(d), *Ex*

*parte Leos*, No. 65,252-1 Sup. R. at 75-76, and therefore this Court is compelled to reach the same conclusion. Petitioner's Petition is without legal or factual merit and must be denied.

Furthermore, a habeas corpus petitioner is not entitled to relief or a hearing on his claims where: he failed to allege a basis for relief, he offers "conclusory allegations unsupported by specifics, contentions that in the face of the record are wholly incredible," *Perillo v. Johnson,* 79 F. 3d at 444, or allegations that can be resolved on the record, *Lawrence v. Lensing,* 42 F. 3d 255, 258-59 (5th Cir. 1994). Petitioner Leos is not entitled to habeas relief or a hearing on his Petition because his claims are conclusory, refuted by the record, or without merit.

### III.

Accordingly, Respondent's motion to dismiss (Docket Entry # 14) is **GRANTED**; Petitioner Leos' § 2254 Habeas Corpus Petition (Docket Entry # 1) is **DENIED**; and this case is **DISMISSED**. All other pending motions are **DENIED** as moot.

**SIGNED on June 4, 2008.**

_____
**NANCY STEIN NOWAK**
**UNITED STATES MAGISTRATE JUDGE**